UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NOS.12-40128-RWZ and 12-40131-RWZ

QUINCY MEDICAL CENTER,
A STEWARD FAMILY HOSPITAL, INC.

v.

APURV GUPTA, M.D.,
and VICTOR MUNGER

MEMORANDUM OF DECISION

January 5, 2015

ZOBEL, D.J.

This appeal arises out of the bankruptcy of Quincy Medical Center, Inc., QMC ED Physicians, Inc., and Quincy Physician Corporation ("Debtors"). Quincy Medical Center, a Steward Family Hospital, Inc. ("Steward")—which is a separate legal entity from the Debtors—appeals the bankruptcy court's post-confirmation judgments allowing two other non-debtors' claims against it. Because the bankruptcy court lacked subject matter jurisdiction to enter those judgments, they are VACATED and the case is remanded with instructions to dismiss Munger's and Gupta's claims against Steward.

I.  **Background**[1]

---

[1] The facts are taken from the bankruptcy court's opinions below. See Memorandum of Decision on Motions of Apurv Gupta and Victor Munger for Allowance of Administrative Expense Claims (Feb. 13, 2012) (Docket # 5-10) ("QMC I"); Motions of Apurv Gupta and Victor Munger for Allowance of Administrative Expense Claims (Sept. 25, 2012) (Docket # 5-24) ("QMC II").

Appellees, Victor Munger and Apurv Gupta, were executives at Quincy Medical Center, a hospital in Quincy, Massachusetts. QMC I at 1. For most of the time they worked there,[2] the hospital was operated by Quincy Medical Center, Inc., QMC ED Physicians, Inc., and Quincy Physicians Corp., which were the Debtors in the bankruptcy case underlying this appeal. Id. at 2.

On July 1, 2011, Debtors filed for bankruptcy in the United States Bankruptcy Court for the District of Massachusetts. See id. at 1. That same day, Debtors filed a motion (the "Sale Motion") asking the bankruptcy court to approve, among other things, an asset purchase agreement ("APA") with Steward. Docket # 5. The APA effectuated the sale of substantially all of Debtors' operating assets to Steward. QMC I at 2.

The APA included provisions about the continued employment of Debtors' employees. Section 9.1 of the APA provides that "[n]ot later than ten (10) Business Days prior to the Closing, Purchaser shall offer employment by Purchaser to each of the Employees who remain employed by Seller as of a recent date, . . . such employment to commence immediately following the Closing." Docket # 5 at 99. Section 9.2 then purports to require the Purchaser to pay each such employee "base wage and salary levels provided to such Employees immediately prior to the Closing" for three months after the Closing, id., and Section 5.14 says that "upon Purchaser's termination of the employment or engagement of any employees or consultants of

---

[2] According to appellees, Munger served as Senior Vice President of Human Resources pursuant to a letter agreement effective March 1, 2010, and Gupta served as Senior Vice President for Clinical Affairs/Chief Medical Officer pursuant to an employment agreement effective March 1, 2010. See Appellee Br. at 3-4 (Docket # 19).

2

Seller at or following the Closing, Purchaser shall be liable to any such persons for severance or retention pay." Id. at 75. The APA also includes several provisions governing its construction, including one that purports to require that amendments or modifications be in writing and one that disavows any third-party beneficiaries. APA § 13.4, id. at 110-11 (amendment or modification); APA § 13.8, id. at 112 (no third-party beneficiaries).

On September 26, 2012, the bankruptcy court issued an order approving the Sale Motion, Docket # 5-2 (the "Sale Order"), and the sale closed on October 1, 2011. QMC II at 2. On October 7, 2011, Debtors filed a proposed Chapter 11 plan of reorganization (the "Plan"). Docket # 20-2. The bankruptcy court confirmed the Plan in an order signed on November 22, 2011 (the "Confirmation Order"). Docket # 20-1. Both the Sale Order and the Plan contain provisions that purport to retain jurisdiction in the bankruptcy court over disputes arising under them. The Sale Order provides that:

> T. It is necessary and appropriate, in order to ensure the validity of the sale of the assets to Steward and to ensure compliance with the Order, for this Court to retain jurisdiction to: (a) interpret and enforce the provisions of the APA, the Assigned Agreements, the Sale Motion and this Order; ... (c) resolve any disputes arising under or relating to the APA, the Assigned Agreements, the Sale Motion, and this Order; . . . .
>
> 37. This Court retains jurisdiction to: (a) Interpret, implement and enforce the terms and provisions of this Order, the APA, the Assigned Agreements; . . . ( c) Resolve any disputes arising under or relating to the APA, the Assigned Agreements, the Sale Motion, or this Order; . . . .

Docket # 5-2 at 15, 29. Similarly, the Plan says that:

> Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall, to the maximum extent permitted by applicable law, retain

3

exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan, pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to: . . .

15. Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code; . . . .

29. Enforce all orders previously entered by the Bankruptcy Court; . . . .

Docket # 20-2 at 39-41. The Confirmation Order incorporates the retention of jurisdiction provisions from the Plan. See Docket # 20-1 at 18.

Debtor Quincy Medical Center, Inc., sent Munger and Gupta a letter terminating their employment shortly after the sale.[3] QMC II at 5. Believing this to have been wrongful, Munger and Gupta sought severance pay by filing motions for allowance of administrative expense claims in the bankruptcy court.[4] Docket # 5-3 and 5-5. On February 13, 2012, the bankruptcy court declined to treat Munger's and Gupta's claims as administrative expenses. Docket # 5-10. Yet, it did not wholly deny their motions—the bankruptcy court instead treated them as "seeking relief in the alternative . . . payment by [Steward]." Docket # 5-11 at 1; Docket # 5-12 at 1. After offering Steward an opportunity to respond and holding a non-evidentiary hearing, the bankruptcy court issued orders directing Steward to pay Munger's and Gupta's claims. Docket ## 1036 and 1037.

---

[3] There is a dispute between Debtors, Steward, and Gupta and Munger about the effective date of the termination and about which corporate entity terminated them. Because I do not need to resolve that dispute to resolve this appeal, I make no findings or conclusions about the circumstances of the terminations.

[4] Munger sought $135,000 in a motion filed November 2, 2011. Docket # 5-3. Gupta first sought $468,000 in his motion filed on November 17, 2011, but he amended his claim to seek only $234,000 on April 6, 2012. Docket # 5-5 (Nov. 17, 2011 motion); Docket # 5-20 (Apr. 6, 2012 motion).

4

Steward timely appealed both orders, and I consolidated the appeals. Docket # 24. Steward primarily contends that the bankruptcy court lacked subject matter jurisdiction to decide Munger's and Gupta's claims against it and to enter the orders. It also contends that the bankruptcy court failed to hold a sufficient hearing on the motions, erred in finding that Munger and Gupta had standing to assert a breach of the APA because of a no-third-party-beneficiaries clause, and improperly interpreted the APA's sections on employment obligations. This court has jurisdiction to hear these appeals under 28 U.S.C. § 158(a)(1).

## II.   Legal Standard

"It is hornbook law that a court cannot act in the absence of subject matter jurisdiction; and that, when such jurisdiction is lacking, a court is obliged to note the defect on its own initiative." United States v. Horn, 29 F.3d 754, 767 (1st Cir. 1994). My review of the jurisdictional question, like all of the bankruptcy court's legal conclusions, is de novo. Parker v. Handy (In re Handy), 624 F.3d 19, 21 (1st Cir. 2010).

## III.   Analysis

Bankruptcy courts are vested with "limited authority." See, e.g., Bd. of Governors v. MCorp Fin., Inc., 502 U.S. 32, 40 (1991). "The general grant of bankruptcy jurisdiction is contained in 28 U.S.C. § 1334." In re Boston Regional Med. Ctr., Inc., 410 F.3d 100, 105 (1st Cir. 2005). Section 1334 vests original jurisdiction in the district courts over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). By standing order, this District

has granted the bankruptcy court jurisdiction over all cases in which jurisdiction is premised on § 1334, subject to appellate review by the district court. See D. Mass. L.R. 201 (delegating jurisdiction to bankruptcy court); 28 U.S.C. § 157 (authorizing delegation of jurisdiction to bankruptcy court); id. § 158 (authorizing review of bankruptcy court orders by district court).

Section 1334 grants district courts (and, by delegation, bankruptcy courts) jurisdiction over four types of matters: "(1) cases under title 11, (2) proceeding arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 162 (3d Cir. 2004). Proceedings falling into the first three categories are called "core" proceedings, while those falling into the last category are "non-core" proceedings. Stern v. Marshall, 131 S. Ct. 2594, 2605 (2011). Steward contends that the proceedings under review here are "non-core" proceedings, Appellant Br. at 11, which Munger and Gupta do not appear to dispute.[5]

The key question in this appeal therefore is whether Munger's and Gupta's claims against Steward are "related to" the Debtors' bankruptcy proceeding. "The statutory grant of 'related to' jurisdiction is quite broad," extending to "the entire universe of matters connected with bankruptcy estates." In re Boston Regional Med.

---

[5] Despite being empowered to do so under 28 U.S.C. § 157, the bankruptcy court did not determine whether the disputes on appeal were core proceedings. Because the parties appear to agree that they are not and because other courts have so held in similar contexts, I will assume that these are non-core proceedings. See, e.g., In re Mortg. Lenders Network, USA, Inc., No. 07-10146, 2011 WL 4543257, at *3-4 (Bankr. D. Del. Sept. 28, 2011) (concluding that plaintiffs' claims for unpaid wages were non-core because they did not fall into any of the categories of core proceedings in 28 U.S.C. § 157(b) and did not arise in a bankruptcy case or under the Bankruptcy Code).

6

Ctr., Inc., 410 F.3d at 105.  Yet, "related to" jurisdiction is not without limit. "[B]ankruptcy courts ordinarily may exercise related to jurisdiction as long as the outcome of the litigation 'potentially [could] have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate.'"  Id. (quoting In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991)) (emphasis added). The critical limitation on "related to" jurisdiction is that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."  Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995).

Timing also affects the relationship between a third-party proceeding and a bankruptcy estate.  After confirmation of the bankruptcy estate's plan of reorganization, the perimeter of "related to" jurisdiction may shrink because, logically, "it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred." In re Resorts Int'l, 372 F.3d at 165; see also In re Boston Regional Med. Ctr., 410 F.3d at 107 ("[T]here will be situations in which the fact that particular litigation arises after confirmation of a reorganization plan will defeat an attempted exercise of bankruptcy jurisdiction.").

A retention-of-jurisdiction provision in a plan confirmation order does not expand the bankruptcy court's subject matter jurisdiction beyond that allowed by § 1334.  See, e.g., In re Resorts Int'l, 372 F.3d at 161 ("[I]f a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or

7

other order."). Even if the parties appearing before the bankruptcy court wish to grant it jurisdiction over disputes arising outside of the scope of the court's jurisdiction statute, they may not do so. "Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization." Id.; cf. Horn, 29 F.3d at 768 ("Parties cannot confer subject matter jurisdiction on either a trial or an appellate court by indolence, oversight, acquiescence, or consent.").

Munger and Gupta contend that I need not "wade into the murky waters" of post-confirmation subject matter jurisdiction because the bankruptcy court expressly retained jurisdiction to resolve disputes involving the APA, like Munger's and Gupta's. Appellees' Br. at 10 (quoting In re The Educ. Res. Inst., Inc., 442 B.R. 20, 25 & n.5 (Bankr. D. Mass. 2010)). Pointing to the retention of jurisdiction provisions in the Sale Order and Plan along with authority approving of such provisions and holding that bankruptcy courts have authority to interpret their own orders, they contend that the bankruptcy court definitively granted itself subject matter jurisdiction over these disputes.[6] That misses the point. A court can only retain jurisdiction that it had in the first place. "If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant." In re Resorts Int'l, Inc., 372 F.3d 154, 161 (3d Cir. 2004). To

---

[6] Munger and Gupta also contend that the bankruptcy court had jurisdiction under 28 U.S.C. § 1651, the All Writs Act, because "[t]he Orders at issue in this appeal were clearly necessary and appropriate in aid of the post-confirmation jurisdiction which the Bankruptcy Court appropriately retained and extended in order to protect the integrity of the bankruptcy process." Appellees' Br. at 11. Munger's and Gupta's argument begs the question though, because the All Writs Act only authorizes "all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651. It does not determine the reach of the court's subject matter jurisdiction.

8

find jurisdiction here, I must look beyond the retention of jurisdiction provision and decide whether this dispute falls with the scope of 28 U.S.C. § 1334—i.e., whether this dispute "potentially could have some effect on the bankruptcy estate."[7] In re Boston Regional Med. Ctr., Inc., 410 F.3d at 105.

All parties admit that this is fundamentally a breach of contract dispute involving the APA. Munger and Gupta make no arguments under other contracts. In fact, at least Gupta expressly contends that "the status of Gupta's former contract with the Debtors is irrelevant." Appellees' Br. at 24; see also QMC II at 5 n.3 (noting that Gupta's "amended claim is brought under the APA, not under his employment contract"). The jurisdictional question therefore turns on whether these disputes among three non-debtors about breach of the APA could affect the Debtors' bankruptcy estate.

The Debtors themselves do not think so. Debtor Quincy Medical Center, Inc., tells the court that it "has no direct financial interest in the outcome of this appeal." See Debtor's Statement Regarding Appellate Standing (Docket # 18). This is a reasonable conclusion, given that no Debtors are parties in this appeal[8]; no party has alleged that the Debtors may be required to indemnify a party in this appeal[9]; no recovery in these

---

[7] I will assume without deciding that these disputes are within the scope of the retention-of-jurisdiction provisions in the bankruptcy court's Sale and Confirmation Orders.

[8] Munger and Gupta did not appeal the bankruptcy court's denial of their administrative claims against the Debtors, where the bankruptcy court concluded that Munger and Gupta "failed to articulate any basis . . . by which QMC should be held liable for Steward's failure to employ [them.]" Docket # 5-10 at 3 (discussing Munger's claims); see also id. at 4 (reaching similar conclusion on Gupta's claims).

[9] Although both parties discuss an indemnification procedure and escrow set up in the APA in support of their arguments about whether Munger and Gupta are proper third-party beneficiaries (Appellant's Br. at 34; Appellees' Br. at 25-26), neither party suggests that Steward may seek indemnification from the Debtors if Munger's and Gupta's claims against it are successful. In fact, Steward's briefing in both this court and the bankruptcy court suggests that such a claim would be time-barred. Appellant's Br. at 6; Docket # 5-23 at 8.

disputes would go to the Debtors or the Debtors' estate; no recovery in these disputes would come from the Debtors; and no aspects of the handling or administration of the estate will be affected by the outcomes of these disputes. Munger and Gupta offer only non-specific and unsupported contentions that "Steward's decision to not offer the Employees employment post-closing . . . is clearly a matter which affected the 'interpretation, implementation, consumnation, execution or administration' of the confirmed bankruptcy plan." Appellees' Br. at 9. Munger and Gupta do not suggest that the resolution of these disputes have delayed or could delay the bankruptcy proceedings, nor do they offer any examples of how the Plan is implicated or how these third-party disputes will affect the estate.

These disputes look like ones that could have arisen entirely outside of the bankruptcy context. They are essentially employment disputes that could arise in any asset sale, regardless of whether the sale involved a bankruptcy proceeding. Upon the closing of Debtor's sale of its assets to Steward, Steward either had an obligation to hire Munger and Gupta or it did not. That a court may need to look at terms of the APA establishing the rights among Munger and Gupta, on the one hand, and Steward, on the other, does not mean that it will have to interpret or implement any documents that affect that bankruptcy estate. These issues can be resolved entirely on the APA's terms and without reference to bankruptcy court documents. Munger and Gupta have pointed to no bankruptcy-related issues or to any provisions of the Sale Order, the Plan, the Confirmation Order, or any other order or filing in the bankruptcy court that will require construction to resolve any of appellees' claims. Munger and Gupta

10

therefore have failed to demonstrate the "close nexus" between their claims against Steward and the bankruptcy proceeding, which is required to establish the bankruptcy court's subject matter jurisdiction.

That this dispute has arisen after the Plan's confirmation only bolsters this conclusion. This case is not an exceptional case, like <u>In re Boston Regional Medical Center, Inc.</u>, where one of the parties is a liquidating entity. <u>See</u> 410 F.3d at 105. It is one where the claims are against an ongoing entity that was never a debtor and is no longer involved in the bankruptcy proceeding. Although the First Circuit did not address this situation in <u>Boston Regional Medical Center</u>, it recognized that a reorganized debtor that has reentered the marketplace presents a strong case for narrowing the bankruptcy court's post-confirmation "related to" jurisdiction because the reorganized debtor must be "emancipated" from the bankruptcy to avoid "the specter of endless bankruptcy jurisdiction and a kindred concern about unfairly advantaging reorganized debtors." <u>See</u> <u>id.</u> at 106. Those concerns are even stronger here, where Steward was merely a third-party purchaser of the Debtors' assets and not itself a debtor. Allowing bankruptcy jurisdiction over any matter involving the purchase agreement would create a specter of litigation in the bankruptcy court for years to come, with Steward—which has always been an ongoing, non-bankrupt entity—being able to insulate itself from litigation about the acquired assets by (perhaps selectively) forcing parties to bring claims against it in the bankruptcy court.

Munger's and Gupta's cited authority is not to the contrary. Much of what they cite involves claims in which the debtor or its liquidating trust are a party. For example,

11

In re Enivid, Inc., 364 B.R. 139, 147 (Bankr. D. Mass. 2007), involved a motion for preliminary injunctions by the trustees of a liquidating trust established under a debtor's confirmed Chapter 11 plan to prevent shareholders from entering into a settlement of their own fraud claims against debtor's officers and directors. The bankruptcy court concluded that it had subject matter jurisdiction to resolve the dispute because it was "conceivable that the allowance or disallowance of the [injunctions] will have an effect on the Plan Trustees' potential recoveries from the D & O Policies' proceeds." Similarly, In re The Educ. Res. Inst., Inc., 442 B.R. 20, 24 (Bankr. D. Mass. 2010), involved a dispute between a creditor and a reorganized debtor. The court exercised subject matter jurisdiction because resolution of the dispute "directly effects the prospects for the newly reorganized [debtor]." Id.; see also First Marblehead Corp. v. The Educ. Res. Inst., Inc., 463 B.R. 151, 154 (D. Mass. 2011); cf. In re G.S.F. Corp., 938 F.2d 1467, 1476 (1st Cir. 1991) (concluding the bankruptcy court had subject matter jurisdiction to enjoin debtor's landlord from proceeding against debtor's secured creditor in state court where the disputes would "put[] the [debtor's] estate at risk of liability for what could be a substantial damage award"). Donaldson v. Bernstein, 104 F.3d 547, 553 (3d Cir. 1997), also involved a dispute that directly impacted the bankruptcy proceeding because the trustee, through the lawsuit, was "basically . . . seeking to carry out the intent of the reorganization plan." Id.; see also id. ("[T]his action implicates the integrity of the bankruptcy process, as the [defendants'] actions impaired [the debtor's] ability to make the payments required under the plan."). In each of these cases, resolution of the underlying dispute would affect the funds available to

12

the debtor or the execution of the Chapter 11 plan. That is not the case here.

Accordingly, I find that the bankruptcy court does not have "related to" subject matter jurisdiction over these actions.[10]

## IV. Conclusion

The judgment of the bankruptcy court is VACATED and the case is REMANDED with instructions to dismiss Munger's and Gupta's claims against Steward for lack of subject matter jurisdiction.

|      January 5, 2015      |      /s/Rya W. Zobel      |
|---|---|
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |

---

[10] As an alternative to arguing that the bankruptcy court had subject matter jurisdiction over this dispute, Munger and Gupta ask me to exercise my purported discretion under Local Rule 206 to treat the bankruptcy court's order as proposed findings of fact and conclusions of law. I may not do so. First, Local Rule 206, by its title, applies to "core proceedings." This is indisputably not a core proceeding. See supra note 5. Second, Local Rule 206 applies only to cases "referred [to the bankruptcy court] under L.R. 201." Local Rule 201, however, only refers proceedings that may be referred under 28 U.S.C. § 157—i.e., cases "related to" a case under Title 11. As explained above, this is not such a proceeding. Third, even if Local Rule 206 could be construed to allow me to adopt the bankruptcy court's order, it is discretionary and permits me to do decline to do so. Because Steward contests the adequacy of the proceedings that led to the bankruptcy court's orders, to the extent I am allowed to consider them at all, I decline to adopt them.